**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | | |
|---|---|---|
| Criteo SA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 0:18-cv-02889-JMC |
| | ) | |
| v. | ) | |
| | ) | |
| Unique USA, Inc., | ) | **ORDER AND OPINION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Criteo SA ("Criteo") brings this action seeking overdue payments arising from the advertising and marketing services that it provided to Unique. (ECF No. 1-1.)

This matter is before the court pursuant to Defendant Unique USA, Inc.'s ("Unique") Motion to Dismiss and Answer under Rule 12 of the Federal Rules of Civil Procedure. (ECF No. 4.) For the reasons set forth below, the court **DENIES** Unique's Motion to Dismiss and Answer (ECF No. 4) without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 14, 2018, Criteo, a corporation duly incorporated within the state of Delaware, filed this action against Unique, a South Carolina limited-liability company with principal offices and agents in York, South Carolina. (ECF No. 1-1 at 2.) Criteo is a global company that specializes in digital advertising and marketing. *Criteo SA (CRTO.O) Company Profile*, REUTERS, https://www.reuters.com/finance/stocks/company-profile/CRTO.O (last visited June 27, 2019).[1] Unique is a "supplier of floor coverings" that "ships tens of thousands of rugs

---

[1] Under the Federal Rules of Evidence, the court is permitted, "at any stage of the proceeding," to "take judicial notice on its own." FED. R. EVID. 201(c)–(d). Moreover, the court may take judicial notice of a fact "that is not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from

worldwide every month." *Unique USA Inc.*, LINKEDIN, https://www.linkedin.com/company/ unique-usa-inc./about/ (last visited June 27, 2019). *See also Unique USA, Inc. Company Profile*, BLOOMBERG, https://www.bloomberg.com/profile/company/1442274D:US (last visited June 27, 2019).

Criteo's Complaint alleges Unique agreed to purchase digital marketing services from it, and "on September 8, 2014[,] executed and delivered to [Criteo] the Universal Insertion Order for the United States."[2] (ECF No. 1-1 at 2–3.) According to the Complaint, on December 15, 2014, Unique executed and delivered to Criteo the Universal Insertion Orders ("UIOs") from Switzerland, Canada, the United Kingdom, and Australia. (*Id*. at 3.) Criteo claims that it provided the digital marketing and/or advertising services for Unique, under the terms the parties agreed upon within the UIO, and alleges Unique has failed to pay a due and outstanding balance of $1,025,208.40, despite demands for payment of the outstanding balance.[3] (*Id*. at 3–4.)

On October 25, 2018, Unique filed its Notice of Removal removing this case from the York County (South Carolina) Court of Common Pleas to the United States District Court for the District

---

sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(1)–(2). Based upon the pleadings, there is no dispute concerning the nature of Criteo's and Unique's business activities. (*See* ECF Nos. 1-1, 4, 8, 9.) Additionally, the facts concerning the nature of Criteo's and Unique's businesses are based on information provided by "sources whose accuracy cannot reasonably be questioned," including Reuters, Bloomberg, and Unique's LinkedIn page. FED. R. EVID. 201(b)(2). The court takes judicial notice of the websites only for the purpose of describing the nature of Criteo's and Unique's businesses. *See Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011) ("[J]udicially noticed documents may be considered only for limited purposes.").

[2] The Universal Insertion Orders ("UIO"), attached to the Complaint as Exhibits A and B, are documents that state the terms of the agreement between Unique and Criteo. (*See* ECF No. 1-1 at 5–16.) The UIOs contain details regarding Unique's purchase of Criteo's marketing services and are signed by representatives of both Criteo and Unique. (*See id.*)

[3] Exhibit C of the Complaint contains invoices for the services provided by Criteo, and the invoices include payment due dates ranging from August 18, 2015, to October 25, 2017. (*See* ECF No. 1-1 at 19–43.)

of South Carolina, on the basis of diversity jurisdiction, pursuant to Fed. R. Civ. P. 81(c) and 28 U.S.C. § 1332. (ECF No. 1.) On the same date, Unique filed its Motion to Dismiss and Answer, in which Unique moves to dismiss the action pursuant to S.C. Code Ann. § 33-15-102(a) (West 2019), arguing that Criteo "has not complied with the statutory requirements for bringing a lawsuit in South Carolina." (ECF No. 4 at 1.) Further, Unique moves to stay this action until the court receives timely proof that Criteo "has been legally authorized to do business in South Carolina." (*Id*.)

In Criteo's Response to the Motion to Dismiss, filed on November 29, 2018, Criteo argues that Unique's Motion should be denied, stating that "it is not necessary or required that it obtain authorization to do business in South Carolina in order to proceed with suit here to recover an unpaid account from a business located in this State." (ECF No. 8 at 1.) Further, Criteo claims that it "does not transact business in South Carolina within the meaning of section 33-15-101," and that because it "maintains no offices, employees, or place of business in South Carolina," and its activities involving South Carolina are "incident to its interstate commerce transactions," Criteo is not required by §§ 33-15-101 and 33-15-102 to obtain a certificate of authority before bringing an action in South Carolina. (ECF No. 8 at 1 (citing S.C. Code. Ann. §§ 33-15-101, 33-15-102).)

In Unique's Reply to Criteo's Response, filed on December 6, 2018, Unique argues that the "legislative intent must prevail." (ECF No. 9 at 1 (citing *Smith v. Tiffany*, 799 S.E.2d 479 (S.C. 2017)).) Unique continues to claim that S.C. Code Ann. § 33-15-102 prevents Criteo from accessing the courts of South Carolina because Criteo is not licensed to do business in the state. (*Id*.) Additionally, Unique asserts that Criteo is prohibited from transacting business in South Carolina "until it obtains a certificate of authority from the Secretary of State," and that none of the exceptions to the applicable statute apply to Criteo. (*Id*. at 2 (quoting S.C. Code Ann. § 33-15-

101(a))). *See also* S.C. Code Ann. § 33-15-101(b). Further, Unique contends that "South Carolina certainly has an interest in not opening its courts, paid for with state revenue generated from South Carolina citizens, to foreign corporations who have not paid relevant fees and taxes to enable those foreign corporations to avail themselves of the courts of this State." (*Id.* (citing *Triplett v. R. M. Wade & Co.*, 200 S.E.2d 375 (S.C. 1973)).)

## II. LEGAL STANDARD

### A. <u>Motions to Dismiss Under Fed. R. Civ. 12(b)(6)</u>

When a party files a motion to dismiss contemporaneously with its answer, federal district courts should treat the motion to dismiss as seeking a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), rather than as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Walter v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). "A motion for judgment on the pleadings made pursuant to Rule 12(c) is decided under the same standard as a motion to dismiss made pursuant to Rule 12(b)(6) with the sole difference being that the court is to consider the answer in addition to the complaint." *L. Foster Consulting, LLC v. XL Grp., Inc.*, No. 3:11cv800(REP), 2012 WL 2785904, at *3 (E.D. Va. 2012) (citing *Walter*, 589 F.3d at 139).

A motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)). For a complaint to survive a motion to dismiss for its failure to state a claim, the Federal Rules of Civil Procedure require that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "In evaluating a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor." *McMurray v. LRJ*

*Restaurants, Inc.*, No. 4:10-cv-01435-JMC, 2011 WL 247906, at *1 (D.S.C. Jan. 26, 2011) (citing

*McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996)).

## B. Foreign Corporations in South Carolina

Under S.C. Code Ann. § 33-15-101(a), "a foreign corporation may not transact business in [South Carolina] until it obtains a certificate of authority from the Secretary of State." Subsection (b) of S.C. Code Ann. § 33-15-101 provides a non-exhaustive list of activities that "do not constitute transacting business within the meaning of subsection (a)."[4] "A foreign corporation transacting business in [South Carolina] without a certificate of authority may not maintain a proceeding in any court in [South Carolina] until it obtains a certificate of authority." S.C. Code Ann. § 33-15-102(a). Lastly, the statute states that "a court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority." S.C. Code Ann. § 33-15-102(c).

---

[4] "The following activities, among others, do not constitute transacting business within the meaning of subsection (a): (1) maintaining, defending, or settling a proceeding; (2) holding meetings of the board of directors or shareholders or carrying on other activities concerning internal corporate affairs; (3) maintaining bank accounts; (4) maintaining offices or agencies for the transfer, exchange, and registration of the corporation's own securities or maintaining trustees or depositories with respect to those securities; (5) selling through independent contractors; (6) soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this State before they become contracts; (7) creating or acquiring any indebtedness, mortgages, and security interests in real or personal property; (8) securing or collecting debts or enforcing mortgages, security interests, or other rights in property securing debts; (9) owning, without more, real or personal property; (10) conducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature; (11) transacting business in interstate commerce; (12) owning and controlling a subsidiary corporation incorporated in or transacting business within this State; or (13) owning, without more, an interest in a limited liability company organized or transacting business in this State." S.C. Code Ann. § 33-15-101(b).

# III. DISCUSSION

## A.  Unique's Motion to Dismiss

As an initial matter, Unique proceeds under the assumption that S.C. Code Ann. § 33-15-102, a door-closing statute,[5] can prevent a foreign corporation from bringing suit in any court, including a federal court, in South Carolina. (*See* ECF No. 4.) Generally, door-closing statutes aimed at unregistered foreign corporations apply in federal district courts, sitting in diversity jurisdiction, unless countervailing federal interests preclude the statute's application. *See Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 65 (4th Cir. 1965) (citing *Markham v. City of Newport News*, 292 F.2d 711, 718 (4th Cir. 1961) ("[A] nonresident litigant in resorting to the federal diversity jurisdiction should obtain the same relief a resident litigant asserting the same cause of action would receive in the state courts.")). *See also Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 463 F. Supp. 2d 544, 549 (D.S.C. 2006) (citing *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949) ("A right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case; that where in such cases one is barred from recovery in the state court, he should likewise be barred in the federal court.")).

In *Szantay v. Beech Aircraft Corp.*, the United States Court of Appeals for the Fourth Circuit provided guidelines for applying the *Erie* doctrine to door-closing statutes:

> 1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.
> 2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling.

---

[5] Door-closing statutes "preclude state courts from entertaining specified actions." *See* Recent Development, *Diversity Jurisdiction: State Door-Closing Legislation Under the Erie Doctrine*, 66 COLUM. L. REV. 377 (1996). These statutes "affect a foreign corporation's capacity to sue rather than a court's subject matter jurisdiction." *Chet Adams Co. v. James F. Pedersen Co.*, 413 S.E.2d 827, 829 (S.C. 1992). S.C. Code Ann. § 33-15-102 is a door-closing statute that precludes foreign corporations who transact business in South Carolina from bringing suit in the state prior to obtaining a certificate of authority. *See* S.C. Code Ann. § 33-15-102(a).

3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity.

349 F.2d at 63–64. In regard to this matter, S.C. Code Ann. § 33-15-102 is a procedural provision that applies to the right to bring suit in South Carolina, and the court discerns no countervailing federal interests that prevent the statute from being applicable in this case. Further, application of S.C. Code Ann. § 33-15-102 could substantially affect the outcome of this action if the statute precludes Criteo from bringing suit in South Carolina prior to obtaining a certificate of authority. Thus, S.C. Code Ann. § 33-15-102 applies to this diversity suit. *See Tuttle Dozer Works, Inc.*, 463 F. Supp. 2d at 551 ("[A]bsent countervailing federal interests, a federal court sitting in diversity" must continue to apply door-closing statutes).

S.C. Code Ann. § 33-15-101(a) states that "a foreign corporation may not transact business in this State until it obtains a certificate of authority." Subsection (b) of the statute provides a non-exhaustive list of activities that "do not constitute transacting business within the meaning of subsection (a),"[6] one such provision being "transacting business in interstate commerce." S.C. Code Ann. § 33-15-101(b). If a foreign corporation does not transact business in South Carolina pursuant to S.C. Code Ann. § 33-15-101, the corporation is not required by S.C. Code Ann. § 33-15-102 to obtain a certificate of authority prior to filing suit in South Carolina. *See Hilex Poly Co. LLC v. Omega Plastics Corp.*, No. 4:09-399-TLW, 2010 WL 5019559 (D.S.C. Dec. 3, 2010).

In *Hilex*, a New Jersey corporation entered into a single licensing agreement with a South Carolina corporation. *See id.* In the denial of a partial summary judgment motion, the court concluded there was not sufficient evidence to establish that the New Jersey corporation transacted

---

[6] S.C. Code Ann. § 33-15-101(b), *supra* note 4.

business in South Carolina pursuant to S.C. Code § 33-15-101. *Hilex*, 2010 WL 5019559, at \*2. In reaching its conclusion, the court relied on information provided by the president and chief operating officer of the New Jersey corporation in a declaration submitted to the court, in which the president stated the New Jersey corporation did not have any facilities or employees in South Carolina nor directed advertising or marketing efforts toward South Carolina. *Id.* The court concluded that, based on the evidence and caselaw, the South Carolina corporation failed to establish that the New Jersey corporation transacted business pursuant to S.C. Code Ann. § 33-15-101 because there was no evidence, outside of the single licensing agreement at issue in the case, establishing that the New Jersey corporation engaged in business in South Carolina. *Id.*

Here, Criteo argues in its response to Unique's Motion to Dismiss that Criteo's activities in this case do not constitute transacting business in South Carolina under S.C. Code Ann. §§ 33-15-101 and 33-15-102. (ECF No. 8 at 1.) Criteo attached an affidavit from Suzanne Dominick, the CEO for Criteo, stating that "[Criteo] maintains no offices, employees or agents in the State of South Carolina, and does not transact business in the State of South Carolina." (ECF No. 8-1.) Further, Dominick states that Criteo "performed no services in the State of South Carolina" because the digital marketing and advertising services Criteo provided to Unique "were provided via digital or online access" and "would have been accomplished through interstate commerce." *See id.* Unique asserts in its Reply to Response to Defendant's Motion to Dismiss that the exceptions listed in S.C. Code Ann. § 33-15-102(b) do not apply to Criteo in this case because Criteo allegedly provided services that were contracted for by a South Carolina resident. (ECF No. 9 at 2.) However, this court does not agree with Unique's assertion.

Similar to how the South Carolina corporation in *Hilex* argued that the New Jersey corporation transacted business in South Carolina because it entered into a single agreement with

a South Carolina corporation without providing any other evidence regarding the New Jersey corporation's activities in South Carolina, Unique's contention that Criteo transacts business in South Carolina pursuant to S.C. Code Ann. § 33-15-101 relies solely on the single business agreement at issue in this case with no other allegations or information establishing that Criteo transacted business in South Carolina. (*See* ECF Nos. 4, 9.) Further, this case is similar to *Hilex* in that the only information available to the court regarding Criteo's business activities in South Carolina comes from an affidavit supplied by an officer of Criteo, which was attached to Criteo's Response to Motion to Dismiss. (ECF No. 8-1.) The officer states that Criteo does not have offices or employees in South Carolina and does not perform services in South Carolina. (*Id.*) Thus, based upon the information available in the pleadings and relevant caselaw, Unique has failed to establish that Criteo transacts business in South Carolina pursuant to S.C. Code Ann. § 33-15-101.

Therefore, the court concludes that Criteo was not transacting business in South Carolina and is not required by S.C. Code Ann. § 33-15-102 to obtain a certificate of authority prior to bringing suit in the State of South Carolina. *See Nat'l Bank of Anguilla (Priv. Banking and Trust) Ltd. v. Considine*, 268 F. Supp. 3d 825, 830 (D.S.C. 2017) (concluding, in denial of defendant's motion to dismiss, that plaintiff "was not transacting business in South Carolina" pursuant to §§ 33-15-101 and 33-15-102 because defendant "failed to establish the necessary prerequisite that [plaintiff] was transacting business in South Carolina").

**B. Unique's Request for a Stay**

Pursuant to S.C. Code Ann. § 33-15-102(c), Unique "moves to stay this action until the court receives timely proof that Plaintiff has been legally authorized to do business in South Carolina." (ECF No. 4 at 1.) Subsection (c) of 33-15-102 states that "a court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the

foreign corporation or its successor requires a certificate of authority. If it so determines, the court may further stay the proceeding until the foreign corporation or its successor obtains the certificate." S.C. Code Ann. § 33-15-102(c). However, for the reasons stated above, Criteo is not required to obtain a certificate of authority prior to bringing suit in South Carolina because Criteo's business activities do not constitute transacting business pursuant to S.C. Code Ann. §§ 33-15-101 or 33-15-102. *See supra* Part III.A. Therefore, Unique's request to stay is denied.

## IV. CONCLUSION

Based on the foregoing reasons, the court hereby **DENIES** Unique's Motion to Dismiss and Answer (ECF No. 4) without prejudice.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

July 18, 2019
Columbia, South Carolina